**KIRBY LUMBER CO. v. LONG.**[1]    (No. 144.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 2, 1916.)

Clerks of Courts ⊂⊃6—Depositions ⊂⊃49— Deputy can take deposition only in principal's name.

In view of Acts 1846, 2 Gammel's Laws, pp. 1685, 1686, and 1506, §§ 67, 21, and 23, and Rev. St. 1879, arts. 1103, 1104, 1106, and 2226, and Paschal's Digest, arts. 496, 1431, and 7418, a deputy district clerk can take depositions only in the clerk's name by himself as deputy.

Appeal from District Court, Jasper County; A. E. Davis, Judge.

Suit by C. Long against the Kirby Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Andrews, Streetman, Burns & Logue, of Houston, for appellant.

Denman & Thomas, of Lufkin, for appellee.

BROOKE, J. This is a damage suit for personal injuries alleged to have been sustained by C. Long, the plaintiff below, while

[1] Questions certified to Supreme Court, Dec. 5, 1916. Certified questions withdrawn on motion, Oct. 4, 1920. Appeal dismissed on agreement of parties, Oct. 27, 1920.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in the employ of the Kirby Lumber Company. Plaintiff's original petition, which was filed on October 13, 1915, prays for $10,000 damages, it being alleged in said petition that plaintiff suffered injury to his right eye while in the employ of defendant, due to its negligence. The cause was tried before a jury at the December term, 1915, of the district court of Jasper county, Tex., and was by the court submitted to the jury on special issues supplemented by certain instructions concerning the law of the case. On December 21, 1915, the jury returned a verdict in response to the issues submitted, finding that plaintiff had been damaged in the sum of $5,000, and answering the other questions touching the issue of liability. It was alleged by plaintiff that he received serious injury to his right eye by reason of same being struck by a projecting limb while plaintiff was engaged in the employment as locomotive fireman on one of defendant's locomotives on May 16, 1915. It was alleged that the locomotive was backing along one of defendant's tracks near Browndel in Jasper county, Tex., and that plaintiff was struck by a limb in his right eye, which caused him serious, painful, and permanent injury. The negligence alleged may be stated as being the failure to furnish plaintiff a reasonably safe place in which to work, in that the tree and limb were permitted to be and remain in such proximity to the track as to be dangerous to one employed in plaintiff's position and engaged in plaintiff's employment.

The defendant company answered by general demurrer, general denial, and special pleas of assumed risk and contributory negligence.

The first assignment of error will be decisive of this case, and we shall not consider any of the remaining assignments. By it the action of the court is challenged as being error in not granting the defendant's motion to suppress and strike out the depositions of plaintiff's witness, Dr. E. D. Pope, for the reason, among other things, that said depositions on file and as offered in evidence purport to have been taken by a deputy district clerk in and for Hardin county, Tex., and that the name of the district clerk nowhere appears upon the depositions, or in connection with the certificate thereto, said officer signing his own name over the language "Deputy District Clerk in and for Hardin County, Texas"; and it is contended that the law is that a deputy district clerk cannot act in any official capacity except in the name of his principal, and the official signature of his principal is always required to give any force and validity to such deputy's acts.

We say with pleasure that this matter has been exhaustively considered in the briefs of both parties, the appellee especially having left nothing unsaid in support of his contention. An inspection shows that there were no cross-interrogatories filed. Defendant raised the point by its motion that the statutory provision is mandatory, and that a deputy district clerk must act, if at all, in the name of his principal.

The statute of 1846 provides as follows:

"It shall be the duty of the clerk, upon application of the parties filing such interrogatories, his agent or attorney, to issue a commission, directed to any chief justice, notary public or clerk of the district court, residing in the county where it is stated in the notice such witness resides, requiring him to cause such witness to appear before him, and to take his answers under oath, to such interrogatories." Gammel's Laws of Texas, vol. 2, pp. 1685, 1686.

The act of May 11, 1846, defining the powers and jurisdiction of district clerks, embraces the following:

"Sec. 21. Be it further enacted, that each clerk elected or appointed, shall have power to appoint one or more deputies, by a written appointment, under his hand and seal of the court, which shall be filed and recorded in the office of the clerk of the county court."

"Sec. 23. Be it further enacted, that clerks elected or appointed and their deputies, shall have power to administer oaths in all cases required in the discharge of the duties of their office." Gammel's Laws of Texas, vol. 2, p. 1506.

These statutes at the time were the only provisions determining whether a deputy clerk as such, not acting in the name of his principal, could take depositions and execute a certificate. In the case of Hughes v. Prewitt, 5 Tex. 267–268, the court says:

"There is another question presented by the appellant in this case, that from its importance, as a point of practice at least, merits the consideration of this court. The plaintiff in the court below obtained a commission to take the testimony of a witness in Houston county by interrogatories. This commission was addressed to any chief justice, notary public, or clerk of the district court of Houston county, and it was executed before, and returned by, a person who assumes to be the deputy of the clerk. The defendant objected to the reading of evidence so taken, on the ground that the deputy of the clerk was not competent to execute and return the commission under the statute. The sixty-seventh section of the act of 1846, regulating judicial proceedings, after directing what way in which interrogatories shall be filed, proceeds: 'It shall be the duty of the clerk, upon application of the parties filing such interrogatories, his agent or attorney, to issue a commission, directed to any chief justice, notary public, or clerk of the district court, residing in the county where it is stated in the notice such witness resides, requiring him to cause such witness to appear before him, and to take his answers under oath, to such interrogatories,' etc. This statute imposes no liability on the person to whom the commission is directed for refusing, or failing,

to execute and return the same. In its terms it is not different from the regulation providing for taking answers to interrogatories of witnesses residing without the state, in which case the commission shall be directed 'to any judge of any court of record within the state or country, where it is stated in the notice, such witness resides, requiring such judge to cause the witness to come before him,' etc. * * * The language of command is used in each case, and no penalty imposed in either; and in the last there can be no question but that it would have been vain and nugatory to have imposed a penalty. The twentieth section of the act organizing the district courts requires the clerk 'to give bond for the safe-keeping of the records, and the faithful discharge of the duties of his office.' By the twenty-first section he is authorized 'to appoint one or more deputies, by a written appointment, under his hand and seal of the court, which shall be filed and recorded in the office of the clerk of the county court.' The twenty-third section provides that the clerks elected or appointed, and their deputies, shall have power to administer oaths in all cases where required in the discharge of the duties of their office. I believe the acts, or parts of the acts, that I have noticed, are all the legislative enactments we have that can have any influence on the question under consideration. Do these, or any of them, make it an official duty of the clerk of the district court, in his office as clerk, to execute and return a commission, directed to him from another court, to take testimony? I think not; no more than it is made the official duty of the judge of a court of record in another state to execute and return such commission. Both have an official duty conferred on them; not, however, a duty of their respective offices, but the duty of commissioners for the particular occasion, and the office so conferred is a special delegation, not to be performed by deputy, no more than any other special and limited trust. In my opinion, the chief justice, the notary, or the foreign judge of a court of record would have fully as much authority in law to discharge the duty by substitution. For errors in the charge of the court below, and also for error in the admission of the evidence returned by the deputy clerk of Houston county, I believe the judgment of the court below ought to be reversed and remanded to the court below for a new trial."

In the case of Urquhart v. Burleson, 6 Tex. 502, the court used the following language:

"The last assignment of error presents a question that has been decided by this court in the case of Hughes v. Prewitt, 5 Tex. 264. There was a commission directed to the clerk of the district court of Travis county, to take the testimony of James Rowe. This commission purports to be executed by Fisk, as deputy clerk of Travis county. In the case cited above we decided that the power given by the commission could not be executed by his substitute; that, in performing the duties required by the commission, the clerk was not discharging a duty appertaining to his office as clerk, and consequently the deputy, who was only authorized to perform official duties, and could not execute and return the commission for the principal, the clerk. The reading of the testimony of the witness was objected to, expressly on the ground that it had been taken and returned by the deputy clerk; and the objection was overruled by the court, and exception properly taken."

The materiality of the testimony in that case was very manifest, and it might be said very manifest in the instant case, and in permitting that testimony to be read to the jury the case was reversed and remanded.

On February 9, 1856, the following provisions appear in the statute:

"That all deputies regularly appointed by the clerks of the several district courts of this state, shall have power to take depositions and to do and perform all other acts that may be lawfully done by said principal clerks." Paschal's Digest, art. 496.

In the case of Allen v. Hoxley's Administrator, 37 Tex. 333, the court says:

"The exceptions to the deposition of Thomas F. McKinney, 'that it was not taken by an officer authorized by law to take depositions, and that it does not show by whom it was taken,' is believed not to be well taken, as the certificate attached to the deposition shows most clearly that it was taken by, and subscribed and sworn to before, the deputy clerk of Travis county, an officer authorized by law to take depositions. The form of the attestation of the clerk, by his deputy, may be considered somewhat awkward, but it is believed to be in accordance with the usual practice. We think, however, that the deputy clerk, under the law, would be authorized to certify to the taking of depositions in his own name, as deputy clerk, without using the name of his principal or chief clerk."

It was while article 496, Paschal's Digest, was in force that the above language was used by the Supreme Court.

In the case of Garner v. Cleveland, 35 Tex. 77, the court uses the following language:

"It may not be improper to take some further notice of the first assignment for error. In the case of Hughes v. Prewitt, 5 Tex. 264, it was decided by this court that a deputy clerk was not an officer authorized by law to take depositions; but the Legislature did confer the authority by act of 9th of February, 1856 (Paschal's Digest, art. 496)."

In the Revised Statutes of 1879, in the introduction, the following language appears officially:

"A bill to be entitled 'An act to adopt and establish the "Revised Civil Statutes of the State of Texas."' Whereas, it is expedient that the general civil statutes of this state should be arranged in appropriate titles, chapters and articles; that the omissions and defects therein should be supplied and remedied; and that the whole should, so far as practicable, be made concise, plain and intelligible.

"Therefore, section 1. Be it enacted by the Legislature of the state of Texas, that the following titles, chapters and articles shall here-

after constitute the Revised Statutes of the State of Texas."

Chapter 2 of Revised Statutes of 1879, art. 1103, is as follows:

"The clerk of the district court, whether elected or appointed, shall have power to appoint one or more deputies by a written appointment under his hand and the seal of his court, which appointment shall be filed in the office of the clerk of the county court, and shall be by him recorded."

Article 1104:

"Such deputies shall take the oath of office prescribed by the Constitution; *they shall act in the name of their principal* [italics ours], and may do and perform all such official acts as may be lawfully done and performed by any such clerk in person."

Article 1106:

"The several clerks of the district court shall have power to administer all oaths and affirmations required in the discharge of their official duties, to take the depositions of witnesses, and generally to perform all such duties as are, or may be, imposed upon them by law."

Article 2226, Revised Statutes 1879, provides that a commission to take depositions shall be addressed cither to a clerk of a district court, or to a judge or clerk of a county court, or to a notary public, being substantially the law before the adoption of the Revised Statutes of 1879. Revised Statutes of 1911 embody the exact language quoted from the Revised Statutes of 1879 above.

Article 1691 of our present Statutes is the same as article 1104 of the Statutes of 1879. The provision requiring that deputy district clerks shall act in the name of their principals was carried forward through all the revisions of the statutes. Thus it will be seen that the Legislature at one time conferred upon deputy clerks authority to act independently of their principals. The statute, when revised in 1879, specifically states that a deputy district clerk shall act in the name of his principal. Evidently there was a purpose in the minds of the Legislature, and that purpose could only have been to abrogate the power of deputy district clerks to take depositions in their own names. It is contended, also, with much force, that the act of August 8, 1870 (Acts 12th Leg. c. 37), authorized clerks of the district courts, their deputies, and notaries public to take acknowledgments of deeds and other written instruments required by law to be recorded in this state; and under the interpretation of that act, in the case of Herndon v. Reed, 82 Tex. 647, 18 S. W. 665, which involved the validity of an acknowledgment to a deed taken and signed by a deputy district clerk without the name of his principal being signed, the Supreme Court held that the statute not only authorized the clerks of district courts, but their deputies also, to take acknowledgments of deeds and of other written instruments, and that, therefore, at that time a deputy clerk could act directly under power conferred upon him by the statute, and not deriving his power by virtue of being appointed by the district clerk. The court says:

"The grounds of objection were that the deed was acknowledged before an officer who described himself in the body of the certificate as the 'deputy clerk of the district court of Smith county,' and who signed it with his own name alone as such deputy clerk. * * * The act of August 8, 1870, authorized 'clerks of the district courts, their deputies, and notaries public, to take acknowledgments of deeds and other written instruments required by law to be recorded in this state.' 2 Paschal's Dig. art. 7414. The statute having expressly empowered the deputies as well as the clerk to take and certify the acknowledgments, it would seem that a deputy was as fully authorized to act as the clerk, and that in authenticating his act it would be proper for him to use his own name and official title. In such a case he exercises a direct and not a derivative power, and in law it should be deemed his own and not the act of his principal. If, therefore, the statute referred to was still in force when the acknowledgment under consideration was taken, the question would be free from embarrassment; but on the 6th of May, 1871, a statute was passed amendatory of the general statutes in reference to the proof and acknowledgment of written instruments for the purpose of registration. That statute purported to amend an act approved May 12, 1846, and so much of it as affects the question now before us reads as follows: 'That section 11 of the above recited act be so amended that it will hereafter read as follows: Proof or acknowledgment of every instrument of writing for record may be taken before some one of the following officers: First, when acknowledged or proved within the state, before some notary public, district clerk, or judge of the Supreme or District Court in the state; second, when acknowledged or proved without the state, and within the United States,' etc. 2 Pasch. Dig. art. 7418. It contains the repealing clause, and if it be repealed it must be by implication. Such repeals are not favored.

"In Wood v. United States, 16 Pet. 363, Mr. Justice Story uses this language: 'We say necessary implication, for it is not sufficient to establish that subsequent laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, cumulative, or auxiliary. There must be a positive repugnance between the provisions of the new law and those of the old; and even then the old law is repealed by implication only pro tanto to the extent of the repugnancy.' Mr. Bishop, in course of a discussion of the doctrine of repeal by implication, says: 'Hence in principle, and equally on the better American authorities and on the English, the just doctrine is that without exception a statute in affirmative terms, with no intimation of an intent to repeal prior laws, does not repeal them unless

the new and old are irreconcilably in conflict.' Bishop, Written Laws, § 760. Here, then, is no irreconcilable conflict. The language of the later act is not that the proof or acknowledgment 'shall be taken,' but that it 'may be taken,' before 'some one' of the officers named; and it seems to me is perfectly consistent with the former law, which permitted still other officers to exercise the power. It must be borne in mind that by the Constitution of 1869 the duties of the clerks of the district courts had been greatly enlarged. Under that Constitution, and the laws made in pursuance thereof, their functions had been so multiplied that it must have been contemplated that they should act through deputies. Therefore no reason suggests itself to my mind why it should have been deemed desirable to repeal the law of 1870. Speaking for myself, I am of opinion that it was not intended to repeal that act."

It occurs to us, as suggested by a reading of the above opinion, that where a statute says in specific terms that a deputy can only act in the name of his principal, that he only has such power by virtue of his appointment as deputy, and therefore must act in the name of the principal; that his authority to act is derivative only.

It is also urged, with plausibility and force, that the act referred to by the Supreme Court, that of August 8, 1870, specially conferred upon clerks of the district court and their deputies the powers specified in the act, namely, the power to take acknowledgments, and that the statutory provisions designating officers to take depositions does not mention deputy clerks; and it is argued that these provisions evidently contemplate that the responsibility for the taking of the depositions shall rest officially upon the district clerk, where his office is called into service for that purpose, and that power which a deputy clerk has to take depositions being a derivative power, that he can give no force and validity without using the name of the district clerk; that a district clerk would be liable, and his bondsmen would be liable, for default or malfeasance in the performance of his duties incident to the taking of depositions, if the depositions bear his name and seal, but that if it is permissible to have depositions taken by deputy clerks, acting individually, independent of their principals, that the statutory protection would not exist; that no bond is required of the deputy clerk, and therefore that it is assumed that the bond given by the district clerk would inure to the benefit of all injured persons, if the injury was due to the default on the part of one of his deputies, but that such would not be the case unless the act were done in the name of the district clerk.

The case of Wimbish v. Woffard, 33 Tex. 110, is cited as holding that a citation attested by a deputy clerk in his own name as deputy clerk, and not using the name of his principal, was void, and it is argued that the statute at that time, as it does now, provided that a citation shall be attested in the name of the clerk and be signed by him. The court in the Wimbish Case says:

"The statute (article 1431, Paschal's Digest) is very explicit that every writ or process 'shall be tested in the name of the clerk of the court from which it is issued.' This is indispensable to the validity of any writ or process from all courts of the state having a clerk. The article further prescribes that they shall be signed by the clerk, as a further requisite to give them legal force. Article 496, Paschal's Digest, provides that the deputy clerk 'shall have power to take depositions and to do and perform all other acts that may be lawfully done by the principal clerk.' This, however, does not dispense with the method prescribed by law for the attesting of writs and process. That method is, it shall bear test in the name of the clerk and be signed by him. If the principal clerk does the act, it must be so done. A deputy only has authority to do what the principal may do, and is not warranted in doing the act in any other way than as it might be done by the principal. He had authority to sign the name of the principal, verifying it as the act of the deputy, by superadding his own name. By reason of this defect in the citations, the court had not legally acquired jurisdiction over the persons of defendants, and the judgment in law was a nullity."

We are not unaware of the language used by Justice Gaines of the Supreme Court, and the many other decisions in Texas to the effect that—

"It has ever been the rule in this court to regard the substance rather than the form of the official act, and we see no reason why, as the deputy is authorized to take the acknowledgment, he may not use his own name in making the certificate. Such a certificate is in accordance with the real fact. The grantor or the witness, as the case may be, appears before the deputy. Why should not the deputy certify to that fact over his official signature and seal of the court whose officer he is? It has been held in this court, and may now be considered settled rule with us, that a writ signed by any deputy sheriff alone, as deputy, is good, and that where he has sold the property he may convey, without using the name of the sheriff."

We are unable, however, to conclude, in the face of the statute, which provides that the deputy of a clerk may only use the official signature of the clerk in the taking of depositions, that the signature of the deputy clerk alone, as such deputy, and not using the name of his principal, would give validity to his acts in such matters.

We have carefully considered this matter in the light of all the decisions available, and in our opinion a deputy district clerk of this state is not authorized to take depositions in his own name, and can only do so by using the name of the clerk of the district court, by himself as deputy. We do not

overlook, and we are not unmindful of, the cogent reasons presented in the able brief of the appellee, but are persuaded to believe that the law is and should be as announced above.

For the error of the lower court in failing and refusing to suppress the depositions of Dr. E. D. Pope, who was a material witness, this cause is reversed and remanded to the lower court for a new trial. It is so ordered.